## A04A1467. KING v. THE STATE.
### (603 SE2d 88)

ANDREWS, Presiding Judge.

Blake Clifton King appeals after a jury convicted him of theft by receiving. King argues the trial court erred in not granting him an appeal bond, in not granting his plea in bar, and in not granting a directed verdict of acquittal. After reviewing the record and transcript of evidence, we conclude there was no reversible error and affirm.

The evidence at trial, taken in the light most favorable to support the verdict, was as follows. A Papa John's employee testified that on the night in question, two gunmen entered the store and forced her to turn over the money in the register. The gunmen left in a white Chevrolet truck.[1] After police were notified, an officer spotted the pickup truck and gave chase. The truck finally came to a stop and officers arrested Randall Clayton, one of King's co-defendants.

Another co-defendant, Kevin Hockenberry, testified that King and Clayton came to his house in Alabama in a white Chevrolet truck that King was driving. He said the three of them drove to the Papa John's restaurant and he and King went inside, pointed guns at the two employees, took the money and ran from the restaurant. Hockenberry and King jumped in the truck and Clayton drove away. At some point, Hockenberry and King jumped out of the truck and hid at a gas station behind a dumpster until they saw the police drive past. Hockenberry and King then stole another truck and drove it back to Alabama.

Co-defendant Clayton's testimony was essentially the same as Hockenberry's. Clayton testified that on the day of the robbery, he and King took two of King's guns and the two of them and Hockenberry drove from Alabama to the Papa John's restaurant in Carrollton in the stolen truck. Clayton said that Hockenberry and King got out of the truck and went into the Papa John's. They were gone for

---

[1] The parties stipulated at trial that this truck, the basis for King's theft by receiving charge, was stolen.

four or five minutes and then came running out and told Clayton to "go." As they were speeding away, they saw a police car turn around to follow them and when they were out of sight, Hockenberry and King jumped out of the truck.

The jury found King guilty on only one count, that of theft by receiving the Chevrolet pickup truck. This appeal followed.

1. King argues the trial court erred in denying his motion for a directed verdict of acquittal on the theft by receiving charge. He claims that although he admitted to riding in the stolen truck in Alabama, he contended that he was never in the truck in Georgia, and the only evidence that he drove the truck in Georgia was that of co-defendant Hockenberry.

> The standard of review for the denial of a motion for a directed verdict of acquittal is the same as for determining the sufficiency of the evidence to support a conviction. We view the evidence in the light most favorable to the jury's verdict, and the defendant no longer enjoys the presumption of innocence. We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the essential elements of the crime beyond a reasonable doubt.

(Footnotes omitted.) *Moore v. State*, 265 Ga. App. 511, 513 (594 SE2d 734) (2004).

King argues the State must prove that he was driving or in actual possession of the truck in Georgia in order for a jury to convict him of theft by receiving. He points out that the only evidence at trial that he was actually driving the truck was when the men were in Alabama.

Under OCGA § 16-8-7 (a), a person commits the offense of theft by receiving stolen property when he (1) "receives, disposes of, or retains stolen property," and (2) knew or should have known that the property was stolen. " 'Receiving' means acquiring possession or control or lending on the security of the property." OCGA § 16-8-7 (a).

A passenger in a stolen vehicle may be convicted of theft by receiving if other circumstances exist from which guilty knowledge may be inferred, such as some evidence, either direct or circumstantial that the accused was a party to the crime by aiding and abetting its commission. *In the Interest of C. W.*, 226 Ga. App. 30, 31-32 (485 SE2d 561) (1997); *Sanders v. State*, 204 Ga. App. 545, 546 (419 SE2d 759) (1992). In this case, Clayton testified that King was with him when he stole the truck. In addition, Hockenberry testified that it was obvious the truck was stolen because "[t]he ignition was messed up." Accordingly, there was sufficient evidence for a jury to find that King knew, or should have known, that the truck was stolen.

As to whether King "possessed" or "controlled" the truck, there was testimony that both King and Clayton drove the truck on the day of the robbery, in addition to the testimony that King was with Clayton when he stole the truck. King's hat was found in the truck, and King's guns were in the truck when King and Clayton picked up Hockenberry. Accordingly, the jury could infer from this evidence that King was in possession and control of the truck in Georgia. *Sanders*, supra at 546; *Hurston v. State*, 202 Ga. App. 311, 313 (414 SE2d 303) (1991).

King also argues the evidence was insufficient because the only evidence linking him to the crime was the uncorroborated testimony of an accomplice, in violation of OCGA § 24-4-8. But, "[s]light evidence of a defendant's identity and participation from an extraneous source is all that is required to corroborate the accomplice's testimony and thus support the verdict." (Citation and punctuation omitted.) *Ross v. State*, 264 Ga. App. 830, 831 (592 SE2d 479) (2003); *Edmond v. State*, 267 Ga. 285, 287 (2) (476 SE2d 731) (1996). Moreover, "the corroborating evidence itself need not be sufficient to warrant conviction, but only tend to connect and identify defendant with the crime." (Citation and punctuation omitted.) *Cody v. State*, 195 Ga. App. 318 (393 SE2d 692) (1990). The corroborating evidence may consist entirely of circumstantial evidence and may include defendant's conduct before and after the crime was committed. *Klinect v. State*, 269 Ga. 570, 572 (501 SE2d 810) (1998). "Whether the corroborating evidence is sufficient is a matter for the jury, and even slight evidence of corroboration connecting an accused to a crime is legally sufficient." (Citations omitted.) Id. Moreover, "where an additional accomplice provides testimony to corroborate that of the first accomplice, the evidence can suffice to sustain the conviction." (Citations omitted.) *Gallimore v. State*, 264 Ga. App. 629, 630 (591 SE2d 485) (2003).

Here, the officer testified that King admitted he rode in the truck and that he knew the truck was stolen. In addition to co-defendant Hockenberry's testimony, co-defendant Clayton testified that King was with him when he stole the truck and that he, Hockenberry, and King drove in the truck to the Papa John's in Carrollton. And, King's hat was found in the truck.

Therefore, there was testimony from another accomplice and additional evidence to corroborate Hockenberry's testimony. Accordingly, there was sufficient evidence for the jury to find King guilty of the crime charged beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Next, King claims the trial court erred in not granting his plea in bar for failure to try him within 180 days pursuant to the Interstate Agreement on Detainers Act. Under this Act:

> Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, . . . on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, . . . provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

OCGA § 42-6-20, Art. III (a).

This statute "does not say that the untried indictment shall be dismissed if he is not brought to trial within 180 days after he has served his request for final disposition upon the proper Georgia authorities." *Price v. State*, 237 Ga. 352 (227 SE2d 368) (1976). Nor does it contemplate that the 180-day provision is inflexible. *Ricks v. State*, 204 Ga. App. 441, 443 (419 SE2d 517) (1992).

In this case, King was in prison in Alabama when he was indicted in Georgia in May 2000, for the above offenses. At the hearing on the motion, the State presented evidence that the reason for the delay was due to conflicts of previously appointed defense counsel and requests for continuance from defense counsel. In addition, one of the attorneys who represented King testified that he had a busy trial schedule and was unprepared to go to trial in September. Accordingly, the evidence was that the State was not responsible for the delay and defense counsel had shown good cause in asking for a continuance. The trial court did not err in denying King's plea in bar.

3. In his last enumeration of error, King argues the trial court erred in denying his motion for an appeal bond. We disagree.

"There is no constitutional right to bond pending appeal. The decision to grant or refuse to grant bail in noncapital felony cases after conviction is a matter which lies within the sound discretion of the trial court; we will not control that discretion unless it has been flagrantly abused." (Footnotes omitted.) *Abernathy v. State*, 245 Ga. App. 857 (539 SE2d 203) (2000).

> In exercising its discretion, the trial court must answer four questions: (1) whether there is a substantial risk the defendant will flee; (2) whether there is a substantial risk the defendant will pose a danger to others in the community; (3)

whether there is a substantial risk the defendant will intimi-
date witnesses or otherwise interfere with the administra-
tion of justice; and (4) whether it appears the appeal is
frivolous or taken only for the purpose of delay. An affirma-
tive answer to any one of these questions will support the
trial court's decision to deny an appeal bond. The defendant's
conviction rebuts the prior presumption of innocence and
justifies requiring the defendant to bear the burden of con-
vincing the court to grant an appeal bond. Thus, the trial
court should not grant bond pending appeal unless the de-
fendant presents sufficient information, evidence, or argu-
ment to convince the trial court that none of the four factors
applies.

(Footnotes omitted.) Id. at 857-858.

In this case, the State pointed out that King was from Alabama
and had no ties to the community. In addition, the court stated that
it was concerned about the long prison sentence King was facing.
Although King denied it, the prosecutor told the court that King was
charged with escape in Alabama.

Accordingly, it appears that the court believed there was a
substantial risk that King would flee if granted the bond. Therefore,
we conclude there was no abuse of discretion in the trial court's denial
of the motion. *Abernathy*, supra.

*Judgment affirmed. Miller and Ellington, JJ., concur.*

DECIDED JULY 29, 2004.

*Reuben M. Word*, for appellant.

*Peter J. Skandalakis, District Attorney, Jeffery W. Hunt, John M.
Daley, Assistant District Attorneys*, for appellee.